2009R01422/JTE/JNM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 13- 530 |
| v. | : | |
| LEN RUBINSTEIN | : | 18 U.S.C. §§ 371 and 1956 |

# I N F O R M A T I O N

## COUNT 1
### (Conspiracy to Commit Bribery)

1. At all times relevant to this Information:

   a. Biodiagnostic Laboratory Services, LLC ("BLS") was a clinical blood laboratory headquartered in Parsippany, New Jersey that, among other things, performed tests on the blood specimens of patients referred to BLS by doctors, and then billed payors and others for those tests and related services.

   b. The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

   c. The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or

older, and certain individuals who are disabled. The Medicare Part B program paid for various medical services for beneficiaries, including blood tests and related services.

d. BLS was an approved Medicare provider, and Medicare paid BLS for performing blood tests and related services on beneficiaries who were referred to BLS by physicians participating in Medicare.

e. BLS billed, and was paid by, various private healthcare insurance companies (the "private insurers") in the business of providing health care insurance to individuals and entities under various insurance policies (the "insureds"), pursuant to which the private insurers paid BLS for blood tests and related services performed for insureds who had been referred to BLS by physicians.

f. Co-conspirator David Nicoll was an owner and the President of BLS.

g. Co-conspirator Scott Nicoll was an employee of BLS and, along with co-conspirator David Nicoll, supervised individuals ("salespeople"), including defendant LEN RUBINSTEIN, paid by BLS to recruit physicians to refer their patients' blood specimens to BLS for the performance of blood tests and related services.

h. BLS salespeople were paid commission by BLS based on the amount of revenue received by BLS from Medicare and the private insurers (collectively, the "Payors") for the

performance of blood tests and related services performed on blood samples referred to BLS by physicians the salespeople recruited.

      i. From at least in or about May 2012 through in or about April 2013, defendant LEN RUBINSTEIN was a BLS salesperson.

      2. From at least in or about May 2012 through in or about April 2013, in Morris County, in the District of New Jersey, and elsewhere, defendant

LEN RUBINSTEIN

did knowingly and intentionally conspire and agree with co-conspirators David Nicoll, Scott Nicoll, and others to commit offenses against the United States, that is:

> a. to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, to physicians in order to induce referrals of patients to BLS for the furnishing and arranging for the furnishing of items and services, that is, the referral by physicians of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

b.  to knowingly and intentionally travel in interstate commerce and use and cause to be used the mail with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is, commercial bribery, contrary to N.J.S.A. §2C:21-10 and Title 18, United States Code, Section 1952(a)(3) and, thereafter, to perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity.

### Object of the Conspiracy

3.  The object of this conspiracy was for co-conspirator David Nicoll, co-conspirator Scott Nicoll, defendant LEN RUBINSTEIN, and others to obtain millions of dollars of additional revenue and profits for BLS by paying kickbacks and bribes to physicians for the referral of blood specimens from their patients to BLS for testing and related services, which testing and related services BLS would then bill for and use to obtain payment from the Payors.

### Manner and Means of the Conspiracy

The manner and means by which co-conspirator David Nicoll, co-conspirator Scott Nicoll, defendant LEN RUBINSTEIN,

and others sought to accomplish the object of the conspiracy included, among other things, the following:

4. Co-conspirator David Nicoll, co-conspirator Scott Nicoll, defendant LEN RUBINSTEIN, and others caused bribes from BLS to be paid to physicians to induce the physicians to refer their patients' blood samples to BLS.

5. One or more of the co-conspirators caused millions of dollars in cash bribes to be funneled from BLS to multiple physicians through the bank accounts of consulting companies controlled and operated by BLS salespeople (the "BLS Funded Entities"). One such consulting company was Delta Consulting LLC - a consulting company located in Asbury Park, New Jersey, and controlled by defendant LEN RUBINSTEIN ("Delta").

6. Individually, numerous physicians received bribes totaling thousands of dollars, and in many cases tens of thousands of dollars, either by check or in cash from BLS through the BLS Funded Entities between in or about the summer of 2010 and in or about April 2013. In many cases, these bribes were paid through the use of sham consulting agreements between physicians and the BLS Funded Entities.

7. Many of the same physicians who received bribes from BLS through the BLS Funded Entities between in or about the summer of 2010 and in or about April 2013, had previously been paid thousands of dollars - in some cases substantially more than one hundred thousand dollars - in bribes from BLS through the use

of sham lease and service agreements between in or about January 2006 and in or about July 2010, when a change in New Jersey law prohibited even legitimate lease and service payments from clinical blood laboratories to physicians (the "New Jersey Ban").

8. It was a further part of the conspiracy that to increase the revenue received by BLS, numerous physicians were incentivized to order more of certain types of tests that were highly profitable for BLS. These incentives included a cash fee per specific test ordered, which was intended to cause physicians to order certain tests more often then they would have otherwise ordered those tests.

9. It was a further part of the conspiracy that BLS, Delta, and various of the other BLS Funded Entities maintained detailed records tracking, by month: (i) the monies paid to each physician; (ii) the blood tests ordered, by physician; and (iii) the revenue those blood tests generated for BLS.

### Overt Acts

In furtherance of the conspiracy and in order to effect the objects thereof, the defendant LEN RUBINSTEIN and his co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

10. Between at least as early as May 2012 and in or about April 2013, BLS provided defendant LEN RUBINSTEIN with more than $270,000, which defendant LEN RUBINSTEIN then caused to be deposited into the Delta bank account. During that same period,

a substantial portion of these funds were withdrawn from the Delta bank account by defendant LEN RUBINSTEIN and used to pay bribes to physicians and otherwise fund various aspects of the bribery scheme.

11. On or about December 12, 2012, Medicare paid BLS - by an electronic transfer of funds that originated outside of the State of New Jersey and was received by BLS inside the State of New Jersey - a sum of money for claims and related items submitted by BLS for blood testing on Medicare beneficiaries. A portion of the money paid by Medicare to BLS was for tests performed by BLS on blood specimens referred to BLS by or at the direction of physician J.V. in return for bribe payments.

12. In or about January 2013, defendant LEN RUBINSTEIN personally provided physician J.V. with several thousand dollars in cash in return for his continued referral of blood specimens to BLS.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
## (Money Laundering)

1. Paragraphs 1 and 4 through 12 of Count 1 are incorporated as if set forth at length herein.

2. On or about March 8, 2013, in Monmouth County, in the District of New Jersey, and elsewhere, the defendant,

LEN RUBINSTEIN,

knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, did knowingly and willfully conduct a financial transaction affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, specifically the transfer, delivery, and other disposition of United States currency in excess of $25,000 that was the proceeds of the conspiracy described in Count 1 of this Information to bribe physicians to refer the blood specimens of their patients to BLS for testing and related services.

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## FORFEITURE ALLEGATION AS TO COUNT 1

1. The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2. Upon conviction of the offense of conspiracy to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 1952(a)(3), in violation of Title 18, United States Code, Section 371, the defendant, LEN RUBINSTEIN, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 982(a)(7), all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the conspiracy to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), and pursuant to 18 U.S.C. §§ 981(a)(1)(C)and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to Title 18, United States Code, Section 1952(a)(3) violate the Travel Act, including, but not limited to, the sum of $225,000, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the conspiracy offense charged in Count 1.

## FORFEITURE ALLEGATION AS TO COUNT 2

3. The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

4. As the result of committing the money laundering offense in violation of 18 U.S.C. § 1956 alleged in Count 2 of this Information, defendant LEN RUBINSTEIN shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering offense and all property traceable to such property, including but not limited to a money judgment in the amount of $25,000, a sum that represents the property involved in the money laundering offense charged in Count 2 and all property traceable to such property.

### Substitute Assets Provision

5. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(7), to forfeiture of any other property of the defendant, LEN RUBINSTEIN, up to the value of the property described in the paragraphs 2 and 4 of these forfeiture allegations.

PAUL J. FISHMAN
UNITED STATES ATTORNEY

CASE NUMBER: _____

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

LEN RUBINSTEIN

# INFORMATION

18 U.S.C. §§ 371 and 1956

**PAUL J. FISHMAN**
U.S. ATTORNEY NEWARK, NEW JERSEY

JACOB T. ELBERG
JOSEPH N. MINISH
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
973.645.2700